**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| APF - CRE III, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PHILLIP TUFUI WOLFGRAMM, | ) Case No. _____ |
| KOLOA HAAFULUHAO | ) |
| WOLFGRAMM, and RUSSELL | ) |
| CLIVE HANDY, | ) |
| | ) |
| Defendants. | ) |

## VERIFIED COMPLAINT

**NOW COMES** APF - CRE III, LLC, Plaintiff in the above-captioned action (hereinafter, "Plaintiff" or "Lender"), and states as its Complaint the following:

1.

Plaintiff is a Delaware limited liability company with its principal place of business in Atlanta, Georgia.

2.

Defendant Philip Tufui Wolfgramm ("P. Wolfgramm") is a citizen and resident of California. Upon information and belief, P. Wolfgramm can be served with process at 523 North Harcourt Street, Anaheim, California 92801.

PPAB 13682751v1

3.

Defendant Koloa Haafuluhao Wolfgramm ("K. Wolfgramm") is citizen and resident of Texas. Upon information and belief, K. Wolfgramm can be served with process at 2506 Leroy Street, Pearland, Texas 77581.

4.

Upon information and belief, Defendant Russell Clive Handy ("Handy", and together with P. Wolfgramm and K. Wolfgramm, the "Guarantors" or "Defendants") is a citizen and resident of Texas. Upon information and belief, Handy can be served with process at 404 Carriage Creek Lane, Friendswood, Texas 77546 or at 8033 Linda Vista Road, Suite 200, San Diego, California 92111.

5.

Jurisdiction and venue are appropriate in this Court as to all Defendants. In particular, diversity jurisdiction exists as Plaintiff and the Defendants are citizens of different states and the amount in controversy is in excess of $75,000.00. In addition, the loan at issue is governed by Georgia law.

**Background**

6.

Access Point Financial, LLC ("Access Point") is a Delaware limited liability company with its principal place of business in Atlanta, Georgia. Access Point is a private lender which makes loans in the hotel industry.

7.

Defendants are actively engaged in the hotel industry through various entities that they own and control.

8.

Defendants formed a Texas limited liability company known as Lone Star Hospitality WMD LLC ("Borrower") to purchase certain hotels located in Texas. In order to fund the purchase, Defendants obtained a loan from Access Point.

9.

On or about December 27, 2021, Borrower obtained a loan from Access Point (the "Loan"). The Loan was evidenced in part by a December 27, 2021 Promissory Note in the original principal amount of $23,850,000.00 (the "Note"). A true and correct copy of the Note is attached as **Exhibit A** to this Complaint and is fully incorporated herein by reference.

10.

The Loan was also evidenced by a Loan Agreement dated December 27, 2021. A true and correct copy of the Loan Agreement is attached as **Exhibit B** to this Complaint and is fully incorporated herein by reference.

11.

Repayment of the loan was secured by liens against three hotels located respectively in Marshall, Waco, and DeSoto, Texas. Each of those liens was evidenced by a recorded deed of trust and a recorded assignment of leases.

PPAB 13682751v1

12.

In connection with the Loan, each of the Guarantors executed a Guaranty Agreement whereby they agreed to guaranty certain "Guaranteed Obligations" related to the Loan (collectively, the "Guarantees"). True and correct copies of each of the Guarantees are attached hereto as **Exhibit C** (P. Wolfgramm), **Exhibit D** (K. Wolfgramm), and **Exhibit E** (Handy), and are fully incorporated herein by reference. The Note, Loan Agreement, deeds of trust, assignments of rent, Guarantees, and other documents related to the Loan are collectively referred to as the "Loan Documents".

13.

On or about March 9, 2022, the Loan (together with the Guarantees and all other Loan Documents) was assigned by Access Point to Plaintiff, an affiliated investment fund. Plaintiff is the current owner of the Loan. A true and correct copy of the Omnibus Assignment evidencing the assignment of the Loan to Plaintiff is attached hereto as **Exhibit F** and is fully incorporated herein by reference.

14.

In January 2025, Borrower and Guarantors executed a Second Amendment to Loan Documents which, among other things, extended the maturity date of the Note to December 5, 2025. A true and correct copy of the Second Amendment to Loan Documents is attached hereto as **Exhibit G** and is fully incorporated herein by reference.

15.

In the Second Amendment to Loan Documents, Guarantors represented and warranted that "All real and personal property taxes and other taxes, assessments, levies, license fees, permit fees and all other charges heretofore levied, assessed, confirmed, or imposed upon, or in respect of, or which might become a lien upon, the Collateral have been paid in full." (the "Tax Representation").

16.

The Tax Representation was untrue and fraudulent when made in the Second Amendment to Loan Documents (as more fully discussed below).

17.

Guarantors knew the Tax Representation was false at the time they made it in the Second Amendment to Loan Documents.

18.

Borrower defaulted on the Loan by failing to pay monthly payments starting in July 2025. As a result of that default, Lender, Borrower and Guarantors entered into a Forbearance Agreement dated September 5, 2025. A true and correct copy of the Forbearance Agreement is attached as **Exhibit H** to this Complaint and is fully incorporated herein by reference.

19.

Borrower and Guarantors agreed in the Forbearance Agreement that all the Loan Documents were valid and enforceable and that Borrower and Guarantors

-5-

had no defenses, offsets, claims, or counterclaims against Lender regarding the Loan Documents.

20.

Borrower and Guarantors also agreed in the Forbearance Agreement that the existing defaults under the Loan Documents were continuing defaults and were not waived or cured by execution of the Forbearance Agreement.

21.

In order to induce Lender to enter into the Forbearance Agreement, Borrower and Guarantors made certain representations and warranties to Lender including the following:

(a)    "There is no litigation, at law or in equity, nor any proceeding before any federal, state, or other governmental or administrative agency or any arbitrator pending or, to the best knowledge of Borrower, threatened against Borrower or Guarantor, nor any other litigation or proceeding pending or, to the best knowledge of Borrower, threatened which would affect the Collateral which has not previously been disclosed to Lender in writing." (the "Litigation Representation"), Forbearance Agreement Section 6(j);

(b)    the Tax Representation, Forbearance Agreement Section 6(n) (**Exh. H**); and

(c)    "Other than the liens and security interests of the Lender granted under the Security Instruments and Loan Documents, there is no other

-6-

indebtedness for borrowed money or other monetary liens, whether voluntary, involuntary, or statutory, secured by the Properties or any portion thereof." (the "No Liens Representation") Forbearance Agreement Section 6(p) (**Exh. H**).

22.

Each of the Litigation Representation, Tax Representation and No Liens Representations dealt with financial information concerning Borrower.

23.

The Litigation Representation was untrue and fraudulent at the time it was made.

24.

On August 7, 2025 (around a month before the execution of the Forbearance Agreement), the City of Marshall filed a lawsuit (Case No. 25-0711, Harrison County, Texas District Court) against Borrower to collect on unpaid hotel occupancy taxes. That lawsuit alleged that "Defendant failed to report and/or failed to pay hotel occupancy taxes collected for months of January, February, March, April, May, June and July 2025." Among the relief requested by the City of Marshall was injunctive relief compelling Borrower "to refrain from operating a motel or hotel" given its failure to pay hotel occupancy taxes. A true and correct copy of the City of Marshall complaint is attached as **Exhibit I** to the Complaint and is fully incorporated herein by reference.

25.

Upon information and belief (and based on the public docket in the City of Marshall's lawsuit), Borrower was served with a copy of the City of Marshall's complaint on August 12, 2025.

26.

Upon information and belief, each of the Guarantors was aware of the City of Marshall's lawsuit at the time they executed the Forbearance Agreement.

27.

Upon information and belief, each of the Guarantors knew that the Litigation Representation was false at the time it was made.

28.

Borrower did not contest the City of Marshall lawsuit and judgment was entered against it.  A true and correct copy of the judgment against Borrower in the amount of $113,202.41, plus $358.00 in costs, and $2,250.00 in attorney's fees is attached hereto as **Exhibit J** and is fully incorporated herein by reference.

29.

The Tax Representation was untrue and fraudulent at the time it was made in the Forbearance Agreement.

30.

Upon information and belief, each of the Guarantors knew that the Tax Representation was false at the time it was made in the Forbearance Agreement.

PPAB 13682751v1

31.

Borrower and Guarantors generally failed to pay hotel occupancy taxes which they collected from hotel guests to the respective municipal governments with regard to each of the three Texas collateral hotels. Under Texas Statute 351.004, a municipality can seek to enjoin the operation of any hotel if the hotel owner fails to turnover the hotel taxes that were collected from hotel guests. Failure to file hotel occupancy reports and pay the collected taxes can also constitute a criminal misdemeanor under Texas law.

32.

At the time the Guarantors made the Tax Representation in the Forbearance Agreement, they knew that neither they nor Borrower had paid hotel occupancy taxes with regard to the Marshall hotel for any of the months of 2025 and that those taxes were due and owing.

33.

At the time the Guarantors made the Tax Representation in the Forbearance Agreement, they knew that neither they nor Borrower had paid hotel occupancy taxes with regard to the DeSoto hotel since around January 31, 2024 and that those taxes were due and owing.

34.

The amount of unpaid hotel occupancy taxes regarding the three hotels is material and appears to be well in excess of $1 million dollars.

35.

The City of DeSoto, Texas sent Borrower notices regarding the outstanding hotel occupancy taxes. Those notices included an August 11, 2025 Final Notice which informed Borrower that hotel occupancy tax obligations had been in default since January 31, 2024. A copy of a September 8, 2025 demand letter from the City of DeSoto, Texas regarding the almost two years of unpaid hotel occupancy taxes is attached hereto as **Exhibit K** and is fully incorporated herein by reference.

36.

At the time the Guarantors made the Tax Representation, they also knew that they had not paid 2024 real property taxes owed with regard to the Marshall hotel to the County of Harrison.

37.

On August 13, 2025, the County of Harrison, Texas filed a lawsuit (Case No. 25-0740T) against Borrower for recovery regarding the unpaid 2024 real property taxes.

38.

In addition to the false representations in the Amendment and Forbearance Agreement, Borrower also made a false representation when it provided a June 30, 2025 AP Aging Report for the Marshall hotel. That report did not list any of the unpaid hotel occupancy taxes which were owed regarding the Marshall hotel.

-10-

39.

The No Liens Representation was untrue and fraudulent at the time it was made.

40.

Upon information and belief, each of the Guarantors knew that the No Liens Representation was false at the time it was made.

41.

In addition to the non-payment of real property taxes and hotel occupancy taxes, Borrower also failed to pay hotel franchise taxes for calendar year 2023 related to the Marshall hotel. On February 9, 2024, the State of Texas filed a state tax lien against Borrower for unpaid franchise taxes in the amount of $26,224.52. A true and correct copy of that recorded state tax lien is attached hereto as **Exhibit L** and is fully incorporated herein by reference.

42.

After the execution of the Forbearance Agreement, Borrower and Guarantors failed to make payments as required by the terms of the Loan Documents and the Forbearance Agreement.

43.

In November 2025, Lender instituted actions against Borrower to have a receiver appointed over the three collateral hotels. Borrower consented to the appointment of a receiver.

44.

Among other things, the court-appointed receiver uncovered additional information regarding the unpaid taxes and litigation which was pending related to those taxes, as described above.

45.

In addition to all the other existing defaults, the Note is also in default for failure of Borrower to pay it in full by its December 2025 maturity date.

46.

As of May 7, 2026, the balance due under the Note, exclusive of attorneys' fees and costs, is:

| | |
|---|---|
| Principal | $23,062,902.84 |
| Interest | 1,255,864.06 |
| Default Interest | 1,092,853.46 |
| Exit Fees | 238,500.00 |
| Late Charges | 112,657.17 |
| Site Inspection Fees | 2,037.95 |
| Other Fees | 100.00 |
| Release/UCC Fees | 4,400.00 |
| Payoff Quote Preparation Fees | 250.00 |
| Total | $25,769,565.48 |

47.

The Loan Documents provide for the collection of reasonable attorneys' fees and Plaintiff hereby provides Defendants with notice pursuant to O.C.G.A. §13-1-11 of Plaintiff's intention to collect reasonable attorneys' fees, in addition to the outstanding balance due, if Defendants do not pay the outstanding balance owed on the Agreements within ten (10) days of service of this Verified

-12-

Complaint. If Defendants pay the outstanding balance in full before the expiration of such time, then Plaintiff shall not be entitled to seek enforcement of the obligation to pay the attorneys' fees.

## COUNT I
### (Breach of Contract/Guarantees)

48.

Plaintiff incorporates each prior allegation of the Complaint as if fully set forth herein.

49.

Each of the Guarantees is a valid and binding contract between Lender and the respective guarantor.

50.

Plaintiff has performed all of its obligations under the Loan Documents.

51.

Each of the Guarantors is in default under his respective Guarantee for failing to make payments as and when due.

52.

Plaintiff has been damaged by each of the Guarantors' failure to pay amounts owed under their respective Guarantees.

-13-

53.

The actions described above constituted a Springing Full Recourse Event as defined in the Guarantees such that each Guarantor is liable for all sums owned under the Loan Documents.

54.

As a result of Defendants' breach of their respective Guarantees, Plaintiff is entitled to recover from each jointly and severally, an amount of $29,581,308.53, comprised of (a) principal in the amount of $23,062,902.84; (b) outstanding interest in the amount of $2,348,717.52; (c) exit fees in the amount of $238,500.00; (d) late charges in the amount of $112,657.17; (e) site inspection fees in the amount of $2,037.95; (f) other fees in the amount of $100.00; (g) release/UCC fees in the amount of $4,400.00; (h) payoff quote preparation fees; and (i) attorneys' fees in the amount of $3,811,743.05 (calculated as 15% of the first $500.00 of outstanding principal/rent and interest owed, and 10% of the remaining outstanding principal/rent and interest owed, pursuant to O.C.G.A. §13-1-11).

**WHEREFORE**, Plaintiff demands judgment against the Defendants, pursuant to its Verified Complaint as follows:

(a)    On Count I, against each of the Defendants jointly and severally, for damages resulting from the breach of the Guarantees in an amount of $29,581,308.53, comprised of (a) principal in the amount of $23,062,902.84; (b) outstanding interest in the amount of $2,348,717.52; (c) exit fees in the amount

-14-

of $238,500.00; (d) late charges in the amount of $112,657.17; (e) site inspection fees in the amount of $2,037.95; (f) other fees in the amount of $100.00; (g) release/UCC fees in the amount of $4,400.00; (h) payoff quote preparation fees; and (i) attorneys' fees in the amount of $3,811,743.05 (calculated as 15% of the first $500.00 of outstanding principal/rent and interest owed, and 10% of the remaining outstanding principal/rent and interest owed, pursuant to O.C.G.A. §13-1-11);

(b)    For post-judgment interest as allowed by law;

(c)    For the costs of this action; and

(d)    For such other and further relief as this Court deems just and proper.

This the 11th day of May 2026.

/s/ A. Todd Sprinkle
A. Todd Sprinkle, Esq.
Georgia State Bar No. 832602
Olivia B. Landrum, Esq.
Georgia State Bar No. 974502
**PARKER POE ADAMS & BERNSTEIN LLP**
1075 Peachtree Street NE, Suite 1500
Atlanta, Georgia 30309
Telephone: (678) 690-5702
Facsimile: (404) 869-6972
Email: toddsprinkle@parkerpoe.com
Email: olivialandrum@parkerpoe.com
*Attorneys for Plaintiff APF - CRE III, LLC*

PPAB 13682751v1

## VERIFICATION

The undersigned, **VALERIE RICHMOND**, being first duly sworn, deposes and says that she is an authorized agent of plaintiff APF-CRE III, LLC, the Plaintiff in this action; that as such she has business knowledge of the business and is authorized to make this oath and verification; that she has read the foregoing Verified Complaint and the same is true and correct of her own business knowledge or from information provided to her by employees or agents of the Plaintiff, except as to those allegations made upon information and belief, and as to those allegations she believes them to be true.

This the 7th day of May, 2026.

**APF-CRE III, LLC**

By: _____
Valerie Richmond, Authorized Agent


STATE OF GEORGIA
COUNTY OF ___Fulton___

Signed and sworn to before me this day by Valerie Richmond, Authorized Agent.

Date: May ___7___, 2026

_____
Rhonda Loerzel, Notary Public

(OFFICIAL SEAL)                    My Commission Expires: 8/21/2028

Notary Public, State of Georgia
Rhonda Loerzel
Fulton County
Expires 08/21/2028

-16-

PPAB 13682751v1

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing was prepared using Times New Roman font, 14-point type, which is one of the font and print selections approved by the Court in L.R. 5.1(C).

This the 11th day of May 2026.

/s/ A. Todd Sprinkle
A. Todd Sprinkle, Esq.
Georgia State Bar No. 832602
**PARKER POE ADAMS & BERNSTEIN LLP**
1075 Peachtree Street NE, Suite 1500
Atlanta, Georgia 30309
Telephone: (678) 690-5702
Facsimile: (404) 869-6972
Email: toddsprinkle@parkerpoe.com
*Attorneys for Plaintiff APF - CRE III, LLC*

-17-